IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:26-cv-00478-SKC

MOUSSA KOMARA,

    Petitioner,

v.

PAMELA J. BONDI, *et al.*,

    Respondents.

---

## ORDER

---

Petitioner Moussa Komara is a citizen of Guinea and an applicant for asylum who is currently being detained at the Denver Contract Detention Facility. Dkt. 1, ¶¶14, 35. Petitioner entered the United States without inspection and has resided here continuously since at least February 5, 2024. *Id*.

On February 5, 2024, Mr. Komara entered the United States and surrendered himself to Border Patrol, who detained him for two days before releasing him on his own recognizance. *Id*. at ¶33. On February 29, 2024, the Department of Homeland Security (DHS) issued a Notice to Appear directing Petitioner to appear before the immigration court on March 10, 2025. *Id*. at ¶34. When he arrived at his hearing, however, the immigration court cancelled the hearing because the court could not locate a translator who was fluent in

1

Mandingo-Koniaka, Mr. Komara's native language. *Id*. at ¶36. His hearing was rescheduled for May 28, 2025. *Id*.

On that date, despite again not locating an appropriate translator, the hearing proceeded and DHS moved to dismiss its removal action against Mr. Komara. The immigration judge granted the motion, and when Mr. Komara exited the courtroom, he was taken into custody. *Id*. at ¶¶36-38. Five months later, on October 24, 2025, DHS filed a second removal action against Mr. Komara by issuing a second Notice to Appear and serving him with an I-200 administrative arrest warrant.[1] *Id*. at ¶42. According to Respondents, Mr. Komara is being detained

---

[1] Mr. Komara states that despite the warrant being dated May 28, 2025, it was not actually given to him until October. The Court observes that the certificate of service in the warrant states that it was given to Petitioner on May 28, 2025, and was read to him in "Konkani." But Konkani is an entirely different language than the Koniaka dialect of Mandingo. In addition, the line for listing the translator's name says only "N/A". If DHS was able to translate this warrant on the day of the hearing, it is curious that the immigration court was unable to locate a translator, and more curious still that a warrant could be read to Mr. Komara in his native language and yet the name of the translator is "not applicable."

In another peculiar coincidence, the Court notes that the petitioner in *Mayamu K. v. Bondi*, No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025), was at the same May 28, 2025 immigration hearing at Fort Snelling, Minnesota as Mr. Komara. *Id*. at *1. When the petitioner exited the courtroom, she too was immediately arrested. In *Mayamu K.*, the respondents argued the petitioner was served with a Notice and Order of Expedited Removal as opposed to an administrative warrant. The petitioner—much like Mr. Komara—maintained she received no such document upon her arrest. The district court in *Mayamu K.* ordered the petitioner to be released on October 20, 2025, four days before Mr. Komara's arrest warrant materialized. The Court finds these coincidences and discrepancies dubious and call into question whether this warrant was crafted post hoc. But Petitioner does not challenge the veracity of the warrant, and the Court will not explore the matter further.

2

pursuant to 8 U.S.C. § 1225(b)(2)(a).

Mr. Komara filed a Petition for Writ of Habeas Corpus on February 6, 2026, seeking an order from this Court directing Respondents to provide him with a bond hearing. Dkt. 1, p.25. He contends he is subject to detention, if at all, pursuant to 8 U.S.C. § 1226(a). *Id*. This Court ordered Respondents[2] to respond to the Petition on or before February 18, 2026, and show cause why it should not be granted. Dkt. 7. Respondents filed their Response to the Petition on February 13, 2026. Dkt. 10.

The Court has jurisdiction over this matter pursuant to Section 2241 of Title 28, which authorizes it to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[T]he traditional function of the writ is to secure release from illegal custody." *Id*. Noncitizens may properly challenge the lawfulness of their detention through habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

The Court has considered the Petition, the Response, the various attachments, and the governing law. Because Mr. Komara's challenge is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243. For the reasons

---

[2] "Respondents" refers to Pamela Bondi, the United States Attorney General; Kristi Noem, the Secretary of the United States Department of Homeland Security; Todd Lyons, the Acting Director of ICE; Daren K. Margolin, Director for the Executive Office of Immigration Review; Robert Hagan, the Director of the Denver ICE Field Office; and Juan Baltazar, the Warden of the Denver ICE Detention Center.

shared in the following discussion, the Court GRANTS the Petition.

## ANALYSIS

This matter presents a similar factual background and procedural posture to another of the Court's recent cases, *Aleman Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *1 (D. Colo. Dec. 23, 2025). In *Aleman Hernandez*, this Court conducted a review of the governing statutes relied on by the parties here and concluded that when 8 U.S.C. §§ 1225 and 1226 are read together, they "cover [noncitizens] presenting at arrival (under § 1225) and then *everybody else* (under § 1226)." *Aleman Hernandez*, 2025 WL 3718159, at *6 (citing *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025)) (emphasis in original). Because Mr. Aleman Hernandez had been present in the United States for more than a decade, the Court found that Respondents were unlawfully detaining him under § 1225, and that he was only properly detained under § 1226. *Id*.

In much appreciated candor, Respondents acknowledge that the facts and legal issues in this case are materially indistinguishable from those in *Aleman Hernandez*. Dkt. 10, pp.1-2. Although they disagree with the Court's previous conclusions, they recognize that the Supreme Court and Tenth Circuit have not yet offered guidance on these legal questions. *Id*. Respondents also cite the Fifth Circuit's recent order in *Buenrostro-Mendez v. Bondi*, --- F.4th ---, 2026 WL 323330, at *5–10 (5th. Cir. Feb. 6, 2026), wherein that court agreed with Respondents' interpretation of the relevant statutes and they have attached their response brief in *Guiterrez v. Baltazar*, 25-cv-

4

2720-RMR, which explains their positions on these matters (Dkt. 10-1).

The Court has reviewed the Fifth Circuit's opinion but is instead persuaded by District Judge Charlotte N. Sweeney's analysis in *Singh v. Baltazar*, --- F.Supp.3d ---, 2026 WL 352870, at \*\*3-6 (D. Colo. Feb. 9, 2026), wherein she surgically dismantles the Fifth Circuit's reasoning. Like Judge Sweeney, this Court is not persuaded that its own analysis in *Aleman Hernandez* must be upended. Consequently, the Court adopts and incorporates its statutory analysis and conclusions from *Aleman Hernandez, supra*, as though stated fully herein.

In this case, the Government has consistently treated Mr. Komara as detained under § 1226(a) since the date he surrendered himself to immigration authorities, and settled law precludes the Government from switching gears to argue he is now somehow subject to § 1225(b)(2). *Patel v. Crowley,* No. 25 C 11180, 2025 WL 2996787, at \*5 (N.D. Ill. Oct. 24, 2025). To begin, when Mr. Komara surrendered to Border Patrol after entering the United States, DHS then released him on his own recognizance.[3] "Courts have recognized that release on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention." *Patel*, 2025 WL 2996787, at \*5. *See also J.U. v. Maldonado*,

---

[3] That he was released on his own recognizance reflects "a determination by the government that [Mr. Komara] is not a danger to the community or a flight risk." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at \*7 (N.D. Cal. Sept. 12, 2025). There is no suggestion that Mr. Komara has committed any crimes since entering the country, and he dutifully appeared for both hearings as he was required.

No. 25-CV-04836 (OEM), 2025 WL 2772765, at *6 (E.D.N.Y. Sept. 29, 2025) (collecting cases); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (Respondents' contrary theory of the procedural history cannot make sense of Petitioner's release on recognizance because individuals detained following examination under section 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit.").

In addition, on Mr. Komara's Second Notice to Appear, the immigration official checked the box stating, "You are [a noncitizen] *present in the United States* who has not been admitted or paroled," rather than the box stating Mr. Komara was "an arriving [noncitizen]." Dkt. 1-2, p.2 (emphasis added). Because "the Government has affirmatively decided to treat [Petitioner] as being detained under Section 1226(a)[,] it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel*, 2025 WL 2996787, at *6. *See also Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023), quoting *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) (the "[*SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943)] doctrine requires an agency to 'defend its actions based on the reasons it gave when it acted' in the interest of promoting agency accountability, instilling confidence in agency decisions, and maintaining an orderly process of review."). Therefore, Mr. Komara's continued detention pursuant to § 1225 is unlawful.

*   *   *

In his prayer for relief, Mr. Komara seeks an order requiring Respondents to

provide him with a bond hearing. For the reasons shared above, Moussa Komara's Petition for Writ of Habeas Corpus is **GRANTED**[4] and the Court **ORDERS** as follows:

1. Mr. Komara is not subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), and Respondents are **PERMANENTLY ENJOINED** from detaining him under 8 U.S.C. § 1225(b)(2)(A).

2. Respondents shall provide Mr. Komara with a bond hearing under 8 U.S.C. § 1226(a) within SEVEN DAYS of the date of this Court's order.

3. Respondents shall file a status report within TEN DAYS of the date of this Court's order to certify compliance. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

DATED:   February 18, 2026.

BY THE COURT

_____
S. Kato Crews
United States District Judge

---

[4] To the extent Petitioner's Counsel seeks an award of attorney's fees, he must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.

7